UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALESIA BLACKWELL,                                    :
                          Plaintiff,                 :
                                                     :
v.                                                   :
                                                     :     **OPINION AND ORDER**
THE TOWN OF GREENBURGH, THE                          :
GREENBURGH POLICE DEPARTMENT,                        :     13 CV 269 (VB)
POLICE OFFICER FOSTER SHAW,                          :
DETECTIVE JAMES BASULTO, and POLICE                  :
OFFICER BRIAN MATTHEWS,                              :
                          Defendants.                :
-------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Alesia Blackwell brings this action against the Town of Greenburgh (the

"Town"), the Town of Greenburgh Police Department (the "Police Department"), Police Officer

Foster Shaw, Detective James Basulto, and Police Officer Brian Matthews, pursuant to 42 U.S.C.

§ 1983 asserting claims of abuse of process, assault, battery, excessive force, illegal seizure,

negligence, negligent supervision, and negligent hiring.[1]

        Before the Court is a motion for summary judgment on behalf of Officer Shaw, Detective

Basulto, and Officer Matthews (the "Officer Defendants"), along with the Town.[2]  (Doc. #68).

---

[1]     Plaintiff voluntarily withdrew her claims of false arrest, false imprisonment, and
malicious prosecution (Doc. #55), and she concedes all remaining causes of action "are all
predicated on [p]laintiff's claim of use of excessive force."  (Pl.'s Opp'n at 3).

[2]     Neither the Notice of Motion (Doc. #68) nor the ECF docket indicates the Town joined
the Officer Defendants' motion for summary judgment.  However, the Town filed a pre-motion
conference letter (Doc. #49) and was represented at the April 4, 2017, pre-motion conference
during which counsel for all defendants indicated their intention to file a joint motion for
summary judgment.  Moreover, the Town submitted a brief jointly with the Officer Defendants,
which includes separate arguments for granting summary judgment in the Town's favor.
Plaintiff's opposition indicates it applies to a motion for summary judgment on behalf of all

For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.   <u>Factual Background</u>

The parties have submitted briefs, statements of facts, and declarations with supporting exhibits, which reflect the following factual background.[3]

---

defendants (although there is no reason to conclude the Police Department joined in the motion). Accordingly, the Court deems the Town as a joint movant.

[3]     Motions for summary judgment are to be accompanied by a statement of the material facts the movant believes undisputed, with citations to admissible evidence.  Local Civil Rule 56.1(a) & (d).  Only the Officer Defendants submitted a Local Rule 56.1 statement ("Defs.' SOF").  The Town did not submit a separate statement or formally join the Officer Defendants, but instead appears to rely on the Officer Defendants' submission.  Plaintiff, as the party opposing summary judgment, must submit with her opposition papers a statement responding to each of the proposed undisputed facts, with citations to admissible evidence.  Local Civil Rule 56.1(b) & (d).  Plaintiff did not submit a Local Rule 56.1 statement with her opposition papers.  Nevertheless, the Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules," and it "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [a Local Rule 56.1] statement." <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 73 (2d Cir. 2001) (quoting <u>Monahan v. New York City Dep't of Corr.</u>, 214 F.3d 275, 292 (2d Cir. 2000)).  Conversely, when the moving parties' Local Rule 56.1 statement is not contradicted by the Court's review of the record, then the parties' assertions will be "deemed admitted as a matter of law" for the purposes of a summary judgment motion.  <u>See, e.g.</u>, <u>Chitoiu v. UNUM Provident Corp.</u>, 2007 WL 1988406, at *1 & n.1 (S.D.N.Y. July 6, 2007).  The Court's review of the record did not reveal any facts to contradict the relevant facts in defendants' Local Rule 56.1 statement.  Therefore, the Court deems those facts recited below as true.  However, defendants' Local Rule 56.1 statement includes statements that certain persons testified to certain facts, along with conflicting testimony from other persons.  In such instances, the Court accepts as true only that these persons provided the testimony, but not the truth of the underlying facts.  Moreover, the Court has supplemented defendants' Local Rule 56.1 statement with other record facts, when appropriate.

On July 22, 2011, defendant Officer Foster Shaw sought to execute an outstanding arrest warrant on Jerry Williams while Williams was walking on a public sidewalk in Greenburgh, New York.  When Officer Shaw notified Williams that he was under arrest, Williams fled.  Officer Shaw pursued Williams and deployed his Taser, causing Williams to fall to the ground.  Before Officer Shaw reached Williams or was able to handcuff him, Williams recovered and continued to flee.  Officer Shaw pursued Williams, but lost sight of him as Williams was running toward a four-unit apartment building at 3 Oak Street.

Instead of pursuing Williams further, Officer Shaw called and waited for backup.  The backup included defendants Detective Basulto and Officer Matthews, and non-party Sergeant McVeigh, along with a number of other non-party police officers.  The officers canvassed the area to look for Williams, and Detective Basulto and Sergeant McVeigh entered the apartment building at 3 Oak Street.  Detective Basulto knocked on the doors of lower-level apartments in the building, but received no answer.

Justin Person is plaintiff's son and a long-time friend of Williams.  Person lived with plaintiff at 3 Oak Street, Apartment 1E, one of the lower-level apartments.  Person arrived home when police were at the apartment building looking for Williams.  Officer Shaw knew and had a cordial relationship with both Person and plaintiff, and was aware they both lived at 3 Oak Street, Apartment 1E.  Officer Shaw also knew Williams and knew Williams and Person to be friends.  A few weeks prior to July 22, 2011, Officer Shaw spoke with Person and asked him to relay to Williams the message that Williams should take care of his outstanding arrest warrants.

When Person arrived home at his apartment, he rang the doorbell and plaintiff opened the door for him.  The officers then approached the apartment and spoke with plaintiff.  The officers

3

informed plaintiff they believed Williams had fled into her apartment and might have been injured when he fell after having been Tasered.  Plaintiff informed the officers they had the wrong address, as Williams lived at a different address, which she provided.  The officers then left the building, but remained in the area looking for Williams.

Officer Shaw returned to plaintiff's apartment and asked to speak with her.  Officer Shaw took about three steps into the apartment, where he spoke with Person and plaintiff.  During this conversation, multiple officers entered the apartment building, one of whom noticed a Taser wire in the building's entryway.  The officers took the wire to be additional evidence Williams was in plaintiff's apartment and informed plaintiff of this.  Officer Matthews, Detective Basulto, Sergeant McVeigh, and other officers then joined Officer Shaw in plaintiff's apartment.

Plaintiff's apartment has three levels.  The entrance is located on the main floor, where plaintiff's bedroom is located.  Immediately upon entering the apartment, there is a small entryway and hallway, with two staircases.  One staircase leads to the top floor, where there are two bedrooms and a bathroom.  The other staircase leads to the bottom floor, where there is a kitchen and living room.

When the officers entered plaintiff's apartment, Person and plaintiff were the only visible occupants, but Williams was in an upstairs bedroom.  Officer Shaw moved throughout the apartment looking for Williams, while the rest of the officers remained in the entryway.

After looking elsewhere, Officer Shaw began to ascend the staircase to the top floor of the apartment.  At this point, Person was standing on the staircase, assumed an aggressive stance, and screamed at the officers, "get the fuck out," "you don't belong here," and "get a warrant." (Defs.' SOF ¶ 79).  Officer Matthews started to follow Officer Shaw up the staircase, but

plaintiff "slammed her hand on the banister" and attempted to block Officer Matthews's progress by throwing her hip into him and shouting "you can't go upstairs."  (Defs.' SOF ¶ 80).  Officer Matthews "pushed past" plaintiff and proceeded up the staircase and told Person he "needed to step out of the way."  (Defs.' SOF ¶¶ 80–81).  Instead, Person punched Officer Matthews in the chest, causing the two to tumble down the steps into the entryway.

Officer Matthews and two other police officers, Officer DiStefano and Officer Lara, attempted to handcuff Person, who resisted.  At that point, plaintiff punched Officer Lara in the back of the head and jumped on Officer DiStefano's back.  Officer Lara then tasered Person, allowing officers to handcuff Person.

Officer Shaw located Williams in an upstairs bedroom and arrested him.

At some point during the struggle, according to plaintiff, Officer Matthews struck plaintiff across the neck, causing her to suffer severe pain momentarily.  Plaintiff testified Officer Matthews tried to arrest her, but when she resisted, "he lifted me off my feet and slammed me on the floor."  (Defs.' SOF ¶ 135).  Officer Matthews then tried to force plaintiff's left arm behind her back to handcuff her, but due to cervical-fusion surgery, which plaintiff underwent on April 6, 2011, her arm could not bend in that manner.  An officer then handcuffed plaintiff with her arms in front of her body.  Shortly thereafter, Detective Basulto and Officer Shaw took plaintiff to her bedroom and sat her down on her bed.  She complained of neck pain and asked to use a bone stimulator, which the officers allowed.  Plaintiff also complained of hip pain and arm spasms, and requested Detective Basulto remove the handcuffs, which he did.  An ambulance subsequently transported plaintiff to the emergency room at White Plains Hospital.

The White Plains Hospital's record from the emergency visit indicates plaintiff complained of pain in her hip, left side of her neck, left clavicle area, and left arm.  The hospital record reflects that plaintiff's "Chief Complaint" was "multiple areas of pain after being thrown to ground."  (Defs.' SOF ¶ 160).  It further reflects that plaintiff underwent x-rays on her left wrist, left elbow, pelvis, cervical spine, and left hip.  The hospital record indicates plaintiff suffered from "multiple contusion[s] and soft tissue strain injuries," including "contusions to left elbow, wrist, and hip; strain to cervical spine."  (Defs.' SOF ¶¶ 167–68).

On July 27, 2011, plaintiff had a follow-up appointment with Dr. Oh at WESTMED Medical Group.  Plaintiff's medical chart from this appointment indicates her chief complaints were left elbow and left hip injuries.  The "history of present illness" section states:

> Patient presents today complaining of left elbow and left hip pain following a fall on 7/22/11[, when] patient states that she was thrown to the floor at her home by a Greenburgh police officer. . . .  She had immediate pain in her left arm and left hip.  She was seen in the White Plains Hospital Emergency Department the same day as the injuries. . . .  [T]he following day . . . she called the [emergency department] complaining of continuing left arm pain.  She was given a prescription for [P]ercocet 7.5/325mg.  Currently, she is having continuing pain in both the left elbow and left hip.  She has increased pain with any movement of the left arm.  He[r] left hip pain is lateral and is constant.
> . . . .
> Physical exam of the left elbow reveals diffuse tenderness and very limited range of motion secondary to pain and guarding.
> Physical exam of the left hip reveals tenderness in the area of the greater trochanter.  The patient is able to actively flex with pain.

(Defs.' Ex. AA).  Dr. Oh placed plaintiff's left arm in a long-arm splint and sling and ordered an MRI of her hip to rule out a fracture.

On August 1, 2011, plaintiff was seen by Cy Blanco, M.D., at WESTMED Medical Group, who noted that plaintiff was recovering from her prior cervical-fusion surgery until the

July 22, 2011, incident.  Dr. Blanco noted that plaintiff suffered "aggravated neck pain following [the] incident."  (Defs.' SOF ¶ 180).

On August 4, 2011, plaintiff was seen by Morrie Kaplan, M.D., at WESTMED Medical Group.  The notes from that appointment show plaintiff complained of "[h]aving trouble sleeping at night due to incident.  Very emotionally distressed."  (Defs.' Ex. CC).  Dr. Kaplan's notes state: "pt upset crying will ref her to psy for further therapy as is already on some meds."  (Id.).

On August 5, 2011, plaintiff underwent a left hip MRI, which revealed a "[h]istory of left hip trauma," but "[n]o evidence of fracture or bony contusion."  (Defs.' Ex. DD).

On August 11, 2011, plaintiff had another follow-up appointment with Dr. Oh.  The record from that appointment states plaintiff "still has pain in her [left] hip with movements of her hip and with ambulation.  Her [left] elbow is feeling better with only minimal residual pain."  (Defs.' Ex. EE).  It also notes diagnoses of hip and elbow contusions.

On December 3, 2011, Dr. Oh examined plaintiff, and his notes state plaintiff "returns after having had a repeat subacromial cortisone injection in her [left] shoulder a month ago.  She still has pain in her [left] shoulder with movements and use of her shoulder."  (Defs.' Ex. SS).  The record does not reflect the reason plaintiff received cortisone injections or whether the injections were related to the July 22, 2011, incident.

On December 14, 2011, Dr. Oh performed an arthroscopic repair on plaintiff's left shoulder.  The documentation relating to this surgery indicates plaintiff's pre- and post-operative diagnosis is left shoulder impingement.

Medical records from before the July 22, 2011, incident indicate plaintiff had a history of left hip pain dating back to at least 2004.  On June 18, 2004, plaintiff saw Dr. Oh complaining of

chronic left hip pain.  Dr. Oh diagnosed plaintiff with trochanteric bursitis in her left hip, which he treated with a cortisone injection.

On July 11, 2007, Dr. Kaplan examined plaintiff.  Dr. Kaplan's notes indicate plaintiff complained of "left hip pain constantly for the past few months.  She fell 2 years ago off the stoop at her home and never did anything about it now she is in constant pain."  (Defs.' SOF ¶ 207).  The hospital record indicates Dr. Kaplan diagnosed plaintiff with chronic left hip pain.

On July 17, 2011, Dr. Oh saw plaintiff again.  Dr. Oh's record indicates plaintiff had been having issues with her left knee, but she was "ambulating with a cane and is taking oxycontin.  She has been going to [physical therapy] for her neck."  (Defs.' Ex. HH).   It also reflects that plaintiff still had a diagnosis of chronic left hip pain.

Plaintiff testified in her deposition she did not have any medical condition or undergo any treatment regarding her left hip prior to July 22, 2011.

On March 2, 2016, Jeffrey Passick, M.D., provided to defense counsel a report after reviewing plaintiff's medical records.  Dr. Passick concluded:

> On 07/22/11 [plaintiff] presented to the ER alleging she was assaulted by police. Accounts documented in the medical records include either being pushed to the ground and landing on her left side and/or having pain from her neck to her arm, and MRI showed no evidence of any significant trauma to bone or soft tissue.  She did have shoulder surgery but there is no evidence it was related to that incident.

(Defs.' SOF ¶ 262 (quoting Def. Ex. UU (omissions omitted)).   Dr. Passick also stated "[i]mpingement is a syndrome based on congenital shoulder anatomy."  (Defs.' Ex. UU).

The record also contains an affidavit from Dr. Passick, which states:

> Blackwell sustained to her left hip only a contusion which, by definition, is a transitory bruising which resolves without the need for any medical treatment which was caused either when she struck the ground or threw her hip into one of the police officers.  She also sustained a contusion to her left elbow and left wrist

which, in my opinion, were caused when she struck the ground or when her left arm was twisted as the police were attempting to handcuff her.

. . . .

The operative report of December 14, 2011, where arthroscopic surgery was performed to Ms. Blackwell's left shoulder, reveals that she had "hypertrophic bursa" which is an inflammation of the sac of fluid between the acromion and rotator cuff which is a consequence of impingement of the shoulder.  This is a congenital left shoulder condition which in my opinion, within a reasonable degree of medical certainty, was not caused by trauma.

(Defs.' Ex. VV).

II.      Plaintiff's Prior Criminal Case

As a result of the July 22, 2011, incident, plaintiff and Person were charged with obstructing governmental administration in the second degree, assault in the third degree, and resisting arrest.  The information alleged, as relevant here:

Person interfered with and attempted to prevent members of the Greenburgh Police Department from attempting to arrest Jerry Williams on a bench warrant and check on his well being[.]  Person punched P.O. Matthews in the chest and began to violently fight the officers[.]  When officers began to place Person under arrest[,] Blackwell intentionally interfered and attempted to prevent Sergeant McVeigh from effecting an authorized arrest of Person and did so by fighting with the officers and jumping onto the back of the officers[.]  Blackwell then also st[r]uck PO Lara in the back of his head[.]  As McVeigh and another member were attempting to place Blackwell under arrest[,] Blackwell did attempt to prevent McVeigh from placing her under arrest by attempting to evade the handcuffs and refusing to place her hands behind her back by flailing her arms and thus resisted McVeigh and other[s] from effecting an authorized arrest of her.

(Defs.' SOF ¶ 118, quoting Ex. J (alterations and omissions omitted)).

Plaintiff and Person both testified at their joint criminal trial.  The jury found plaintiff guilty of obstructing governmental administration in the second degree in violation of New York Penal Law section 195.05, resisting arrest in violation of Penal Law section 205.30, and attempted assault in the third degree in violation of Penal Law sections 110 and 120.00(1).  The jury found Person guilty of harassment in the second degree and resisting arrest.

III.    Procedural History

On October 18, 2012, plaintiff filed her initial complaint in New York Supreme Court in Westchester County, and defendants removed the case to federal court on January 11, 2013. (Doc. #1).  On February 17, 2015, plaintiff filed an amended complaint.  (Doc. #27).  The amended complaint asserts ten causes of action based on false arrest, false imprisonment, abuse of process, malicious prosecution, assault, battery, 42 U.S.C. §§ 1983 and 1988, negligence, negligent supervision, and negligent hiring.

On March 21, 2016, the Officer Defendants and the Town filed letters (Docs. ##48, 49) stating their intent to move for summary judgment and sought a pre-motion conference pursuant to the Court's individual practices and the Court's November 30, 2015, Order.  (Doc. #44). Pursuant to that Order, plaintiff's response was due March 28, 2016, but plaintiff failed to file a response, either before or after the deadline.  The Court held the pre-motion conference on April 4, 2016, as scheduled, but plaintiff's counsel failed to appear.  Following the conference, the Court directed plaintiff's counsel to submit a letter stating, among other things, which claims plaintiff wished to pursue.  (Doc. #50).   Subsequently, plaintiff withdrew her causes of action for false arrest, false imprisonment, and malicious prosecution.  (Doc. #55).

The amended complaint alleges defendants' excessive force caused plaintiff to suffer "injuries to her hip, causing her to limp, and injuries to her neck, and injuries to her left shoulder requiring surgery.  Plaintiff also required stiches on her left arm in the lower triceps area."  (Am. Compl. ¶ 14).  In addition, plaintiff alleges emotional and psychological injuries consisting of "emotional distress, humiliation, loss of enjoyment of life, intimidation and fear for her safety." (Am. Compl. ¶ 20).

**DISCUSSION**

I.   <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides:

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See id</u>.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of her case on which she has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at

11

249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for her.  Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider admissible evidence.  Nora Bevs., Inc. v. Perrier Grp. Of Am. Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Substantive Claims

Although plaintiff's amended complaint asserts a variety of theories of defendants' liability, her opposition to the motion for summary judgement limits her claims to defendants' alleged use of excessive force.  Her opposition states her remaining causes of action "are all predicated on [p]laintiff's claim of use of excessive force."  (Pl.'s Opp'n at 3).  Thus, plaintiff has abandoned all claims not predicated on excessive force, and all such claims are dismissed.  Accordingly, the Court will not address defendants' arguments that do not pertain to plaintiff's claims for excessive force.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'"  Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. at 399).  Therefore, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d at 96.  This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396.  It is typically the jury's "unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct."  Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).

Defendants assert two types of arguments in favor of their motion for summary judgment. The first type pertains to specific defendants, whereas the second pertains to plaintiff's specific alleged injuries.  The Court addresses each type of argument in turn.

A.    Defendants

The Court addresses the claims against the Town, the Police Department, and Officer Matthews separately, and then the claims against Officer Shaw and Detective Basulto together.

1.    The Town

The Town argues the claims asserted against it are abandoned and must be dismissed because plaintiff's opposition does not oppose summary judgment on claims against the Town.

13

The Court agrees.  See, e.g., Cowan v. City of Mount Vernon, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) (granting summary judgment on claims because of plaintiff's failure to respond to defendant's arguments).  Moreover, plaintiff has failed to provide any evidence in support of its allegation that any violation of her rights was due the Town's policies or customs.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694–95 (1978).

Accordingly, the claims against the Town are dismissed.

### 2.   The Police Department

Although the motion for summary judgment does not explicitly argue in favor of dismissing the claims against the Police Department, the Court must dismiss such claims because city agencies or departments, such as the Police Department, do not have the capacity to be sued under New York law.  See Omnipoint Commc'ns, Inc. v. Town of LaGrange, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); see also N.Y. Gen. Municipal Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village.").

Accordingly, the claims against the Police Department are dismissed.

### 3.   Officer Matthews

Officer Matthews argues collateral estoppel, also known as issue preclusion, "precludes Blackwell from raising any factual disputes necessarily decided by the jury in the judgment of

14

conviction leaving only undisputed facts, which justify a grant of summary judgment in favor of Officer Matthews."  (Defs.' Br. at 10).

The Court disagrees.  Even if the Court were to preclude the re-litigation of all the facts Officer Matthews argues are precluded, material issues of fact remain such that the Court cannot grant Officer Matthews summary judgment.

A conviction for resisting arrest does not preclude a person from bringing a valid excessive force claim.  Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).  "A lawful arrest may be accompanied by excessive force; thus the mere fact of [plaintiff's] convictions for harassment and resisting arrest . . . is not incompatible with his claim for excessive force."  Id.  At issue in plaintiff's criminal trial was her conduct, not the conduct of Officer Matthews.  See Torres v. Dennis, 2013 WL 2898142, at *3 (E.D.N.Y. June 13, 2013).  Similarly, for the same reasons a conviction for resisting arrest does not preclude an excessive force claim, neither do convictions for obstructing governmental administration or attempted assault on a police officer.

"A claim of excessive force would not be precluded by the plaintiff's prior convictions . . . unless facts actually determined in [her] criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit."  Sullivan v. Gagnier, 225 F.3d at 166. Officer Matthews argues that is the case here; he contends the facts determined in plaintiff's criminal trial leave no issue of material fact such that he is entitled to summary judgment.

In conducting an issue-preclusion analysis, federal courts apply the rules of collateral estoppel of the state in which the prior judgment was rendered.  Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).  Here, plaintiff's relevant conviction was in New York State.  In New York, the doctrine of issue preclusion applies when four criteria have been satisfied:

> (1) the issues in both proceedings must be identical; (2) the issue must have been actually litigated and actually decided in the prior proceeding; (3) there must have been a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue must have been necessary to support a valid and final judgment on the merits.

United States v. U.S. Currency in Amount of $119,984.00, More or Less, 304 F.3d 165, 172 (2d Cir. 2002).  "The doctrine of collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits."  Sullivan v. Gagnier, 225 F.3d at 166.  The party moving for issue preclusion carries the burden of establishing preclusion is proper.  Id.

Officer Matthews argues plaintiff's convictions establish the following facts: plaintiff's injuries were suffered during a violent struggle between the police officers, plaintiff, and Person, while police were attempting to apprehend Williams, who had fled; plaintiff slammed her hand on the banister while attempting to block Matthews from using the staircase; Person was aggressive and belligerent; Person punched Officer Matthews in the chest; Person then resisted arrest; plaintiff sought to prevent Person's arrest fighting with, and jumping on the back of, the arresting officers; plaintiff punched

16

Officer Lara in the back of the head; and plaintiff flailed her arms to evade being handcuffed behind her back.

The Court need not conduct the detailed issue-preclusion analysis here, because even if Officer Matthews were correct that issue preclusion prevents the re-litigation of these factual issues, material issues of fact remain.

Assuming the facts Officer Matthews argues are established, the record contains sufficient evidence for a reasonable jury to find that Officer Matthews used excessive force in arresting plaintiff.  For example, plaintiff testified Officer Matthews struck her across her neck while he was standing behind her before she resisted.  She testified Officer Matthews "lifted me off my feet and slammed me on the floor."  (Defs.' SOF ¶ 135).  She testified that Officer Matthews then tried to put her arm behind her back while she was informing him that, because of her prior medical issues, her left arm could not bend that way.  This record evidence creates a material issue of fact that, even assuming Officer Matthews's proffered facts are established, a reasonable jury could still find that Officer Matthews responded in an unreasonable fashion. See, e.g., Torres v. Dennis, 2013 WL 2898142, at *2–3 (denying summary judgment on the merits of plaintiff's excessive force claim despite resisting-arrest conviction).

Accordingly, Officer Matthews's motion for summary judgment by way of issue preclusion is denied.

### 4.    Officer Shaw and Detective Basulto

Although the Officer Defendants' motion for summary judgment lists Shaw and Basulto as movants and seeks summary judgment as to all claims, their memorandum of law contains no argument for granting summary judgment in their favor.  Thus, Officer Shaw and Detective

Basulto failed to carry their burden, as the movants, to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Accordingly, to the extent Officer Shaw and Detective Basulto seek summary judgment as to plaintiff's excessive force claims, that motion is denied.

B.    Injuries

The amended complaint alleges defendants' use of excessive force injured plaintiff's left hip, left shoulder, left arm, and neck.  Plaintiff also alleges defendants caused emotional and psychological injuries, including emotional distress, humiliation, loss of enjoyment of life, intimidation, and fear for her safety.

The Officer Defendants assert two arguments in favor of summary judgment.  First, they argue summary judgment in favor of Officer Matthews is appropriate because there is insufficient evidence to show plaintiff's alleged injuries to her left knee, left shoulder, and lower back resulted from Officer Matthews's conduct.  Second, they argue the injuries to plaintiff's neck, left hip, and left arm, which were allegedly caused by Officer Matthews slamming her to the ground, were non-actionable de minimis injuries, such that summary judgment should be granted.  The Court will address each argument in turn, after first addressing two preliminary matters.

First, the Court notes, again, defendants' fail to address the claims asserted against Officer Shaw and Detective Basulto.  Thus, Officer Shaw and Detective Basulto failed to carry their burden of showing an absence of material fact entitling them to summary judgment.

Second, defendants ignore plaintiff's alleged emotional and psychological injuries. Therefore, defendants failed to carry their burden on this issue.

### 1.    Left Knee, Left Shoulder, and Lower Back Injuries

Officer Matthews argues plaintiff's excessive force claims based on the injuries to her left knee, left shoulder, and lower back must be dismissed for failure to present admissible evidence that these injuries were caused by his alleged excessive force, especially in light of medical evidence that her left shoulder issues were congenital, rather than caused by trauma.

The amended complaint does not allege left knee or lower back injuries.  Accordingly, the Court cannot grant summary judgment on issues that are not properly before the Court.

With respect to her left shoulder injury, Officer Matthews argues "Blackwell cannot present admissible expert testimony from a physician to support her allegation that when Officer [Matthews] allegedly 'slammed' her to the floor it caused any injury to her left shoulder."  (Defs. Br. at 20).  Officer Matthews notes that defendants' medical expert testified that plaintiff suffers from shoulder impingement and hypertrophic bursa, which are congenital issues unrelated to trauma.  Moreover, Officer Matthews contends there are only minimal complaints regarding plaintiff's left shoulder in the medical records immediately following the July 22, 2011, incident.

When a defendant moves for summary judgment, and "undisputed medical records directly and irrefutably contradict a plaintiff's description of [her] injuries, no reasonable jury could credit plaintiff's account of the happening," and therefore summary judgment must be granted in defendant's favor.  Jenkins v. Town of Greenburgh, 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016) (quoting Davis v. Klein, 2013 WL 595620, at *6 (S.D.N.Y. 1999).  In

such instances, plaintiff's contrary allegations are insufficient to raise an issue of material fact. See, e.g., Jenkins v. Town of Greenburgh, 2016 WL 205466, at *5–6.

Plaintiff did not respond to this argument and has proffered no contrary evidence. However, plaintiff's claimed injuries to her left shoulder are not limited to her shoulder impingement and hypertrophic bursa that was surgically repaired. There is sufficient evidence indicating plaintiff injured her left shoulder during the July 22, 2011, incident, even if not permanently or severely, such that a reasonable jury could find Officer Matthews caused plaintiff to suffer a left shoulder injury. Namely, plaintiff experienced pain and tenderness severe enough that she complained of it during her emergency room visit. As explained below, while such pain may not be long-lasting or severe, such substantial injuries are not required to show a Fourth Amendment excessive force claim, especially when combined with a host of documented physical, emotional, and psychological injuries, some of which are unchallenged.

Accordingly, plaintiff's excessive force claim survives summary judgment with respect to her left shoulder injury.

2. Other Injuries

Plaintiff claims defendants' excessive force caused her to suffer a sharp pain in her neck, chronic left hip pain, and a swollen and tender left arm. Officer Matthews argues he should be granted summary judgment because the record evidence shows that, at most, plaintiff's remaining alleged injuries to her neck, left hip, and left arm are de minimis injuries, not sufficiently serious to be actionable on a claim of excessive force.

The Court disagrees.

20

Officer Matthews's argument is based on an overruled line of cases.[4]  Specifically, Officer Matthews argues that, under United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999), and progeny, plaintiff must "establish that the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable."  (Defs.' Br. at 29 (quoting United States v. Walsh, 194 F.3d at 50)).  That is no longer true.  See Carmona v. City of New York, 2016 WL 4401179, at *2–3 (S.D.N.Y. Mar. 1, 2016) (noting Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015), changed the analysis for excessive force claims and stating plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable" (quoting Kingsley v. Hendrickson, 135 S. Ct. at 2473)).

That being said, it remains an open question in this circuit whether evidence that plaintiff suffered only de minimis injuries can serve as conclusive evidence defendant used only de minimis force, such that summary judgment should be granted in favor of defendant on an excessive force claim.  See, e.g., Franks v. New Rochelle Police Dep't, 2015 WL 4922906, at *14 (S.D.N.Y. Aug. 18, 2015).

The Court concludes that analyzing the severity of the plaintiff's injuries, as Officer Matthews suggests, rather than the reasonableness of the force used, is to answer "the wrong question."  Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011) (holding that evidence of only de minimis injuries does not "necessarily foreclose a claim of excessive force under the Fourth Amendment").  As other courts in this District have noted, dismissing excessive force cases because plaintiff did not suffer severe or long-lasting injury would be "plainly perverse.

---

[4]      Moreover, the circuit cases Matthews cites all pertain to Eighth Amendment claims, and the district court cases that rely on these circuit court cases do not explain why the Eighth Amendment analysis translates to the Fourth Amendment context.

For example, if, while questioning a physically passive suspect, a police officer slapped him repeatedly or punched him in the jaw, but left no broken bones or bruises, that conduct would not trigger liability for the use of excessive force." <u>Yang Feng Zhao v. City of New York</u>, 656 F. Supp. 2d 375, 391 n.9 (S.D.N.Y. 2009); <u>see</u> <u>also</u>, <u>Franks v. New Rochelle Police Dep't</u>, 2015 WL 4922906, at *14 (S.D.N.Y. Aug. 18, 2015) (finding the hypothetical example to be persuasive).  Thus, Officer Matthews's argument in favor of summary judgment because plaintiff suffered only <u>de</u> <u>minimis</u> injuries is unpersuasive.

But even if the severity of the injuries could be so minimal as to conclusively show a defendant did not use excessive force, the record does support that conclusion here.  There is uncontested record evidence that plaintiff suffered both acute and chronic injury following the July 22, 2011, incident.  For example, Dr. Oh's records from his examination three weeks after the incident indicates plaintiff still suffered from ongoing pain, limited mobility, and contusions in multiple areas.  Moreover, Dr. Kaplan's notes show plaintiff was crying at her appointment, and Dr. Kaplan noted plaintiff was "[v]ery emotionally distressed" and was "[h]aving trouble sleeping" due to the incident.  (Defs.' Ex. CC).  Defendants completely disregard these emotional and psychological injuries.  And although there is evidence some of plaintiff's complained-of medical issues preceded the incident or were caused by other factors, there is also sufficient record evidence that defendants' actions caused or exacerbated some of plaintiff's serious and chronic issues, such that defendants are not entitled to summary judgment.

Accordingly, Officer Matthews's motion for summary judgment is denied.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

All claims against the Town of Greenburgh and the Greenburgh Police Department are dismissed.

Only plaintiff's claims based on excessive force against Officer Matthews, Officer Shaw, and Detective Basulto remain.

All counsel are directed to appear at a case management conference on April 26, 2017, at 11:30 a.m., at which time the Court expects to set a trial date.

By April 26, 2017, the parties shall submit a proposed Joint Pretrial Order in accordance with the Court's Individual Practices.

The Clerk is instructed to terminate the Town of Greenburgh and the Greenburgh Police Department.

The Clerk is further instructed to terminate the motion.  (Doc. #68).

Dated: March 24, 2017
　　　 White Plains, NY

SO ORDERED:

Vincent L. Briccetti